[S. F. No. 3802.    Department Two.—January 26, 1907.]

## COMMERCIAL AND SAVINGS BANK OF SAN JOSE, Respondent, v. F. S. POTT et al., Appellants.

PROMISSORY NOTE—CONSIDERATION—SALE OF STOCK—SUPPORT OF FIND-ING.—In an action upon a note, the consideration of which was assailed, a finding that the consideration was the sale of shares of stock in a corporation is sufficiently sustained where testimony for the plaintiff, an admission in the answer, and the terms of the contract of purchase showed that it was a sale, and it appears that the stock was transferred on the books in the name of the purchasers, who finally disposed of the same as owners.

ID.—TERMS OF CONTRACT—COLLATERAL SECURITY—DIVIDENDS—POWER OF DISPOSITION.—The fact that the contract provided that the stock was to be held by the vendor as collateral security for the purchase money, and that while so held all dividends thereon should be owned by and paid to the transferees, does not tend to negative their ownership of the stock where it also gave them full power to sell and dispose of the stock while so held.

ID.—ACTION UPON SECURED NOTE OF ONE PURCHASER—EVIDENCE—ORAL AGREEMENT—GUARANTY TO CO-PURCHASER.—Where the note sued upon was the secured note of one purchaser of the stock, to which the other was not a party, evidence that the payee had given to the other purchaser an oral promise to guarantee him against lia-bility on the note in suit was immaterial for the want of such liability, and incompetent to affect any right of contribution between the co-purchasers upon payment of the note, and also as being inadmissible to change or vary the terms of the written contract for sale of the stock by any prior or subsequent oral agreement.

ID.—EVIDENCE—ACTUAL VALUE OF STOCK AT TIME OF SALE—QUALIFI-CATION OF WITNESSES—MARKET VALUE.—It was not error to exclude the evidence of witnesses as to the actual value of the stock at the time of the sale, with respect to which there was no evidence of their qualification to testify on that subject, where it appears that so far as its market value was concerned they were allowed to testify.

ID.—FICTITIOUS MARKET VALUE OF STOCKS—IRRELEVANT EVIDENCE.—Where there was no evidence showing that the stock in question had any fictitious value in the market, it was not error, after ap-pellants' witnesses had been allowed to testify as to the absence of a market value of the stock, to exclude as irrelevant a general ques-tion whether stocks may not have a fictitious value in the market.

ID.—CONSTRUCTION OF ISSUES AND FINDINGS—FRAUD—CONTRACT AS TO INTEREST AND DIVIDENDS—NON-LIABILITY FOR INTEREST—DEFENSE NOT PLEADED.—Where the court found for plaintiff for the note

and unpaid interest and against the defenses of want of consideration and fraud of the vendor of the stock in misrepresenting its value, and the answer in pleading the fraud set forth part of the terms of the contract representing and guaranteeing that interest would be kept paid out of dividends, and alleged there were no dividends or resources therefor, but did not especially plead the defense of non-liability for interest, the court was not required to find thereupon, or to find whether there were sufficient dividends paid upon the stock to discharge the interest on the note.

APPEAL from an order of the Superior Court of Santa Clara County denying a new trial.  A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

James H. Campbell, Edward F. Treadwell, and Van Fleet & Mastick, for Appellants.

Cobb & Rea, for Respondent.

LORIGAN, J.—This action is upon a non-negotiable promissory note given by the defendants, F. S. Pott and wife, to A. G. Field, and by him indorsed and transferred to the plaintiff for value before maturity.  It appears from the findings that about a month prior to November 1, 1892, the defendants F. S. Pott and P. P. Austin entered into negotiations to purchase from said Field his real estate and insurance business in the city of San Jose, and also six hundred and fifty shares of the capital stock of the Western Granite and Marble Company, a corporation for many years organized and existing under the laws of this state, and having its principal place of business in said city of San Jose; that said Pott and Austin, having made due and proper investigation as to the value of said capital stock of said corporation, entered into and executed a written agreement with said Field whereby the latter sold and transferred to said Pott and Austin said real estate business and said capital stock for the sum of $45,750, to be paid, ten thousand dollars in cash, which was paid, the balance to be evidenced by the promissory notes of said Pott and Austin in various amounts bearing date November 1, 1892.  Said stock to be held by said Field as collateral security for the payment of said notes.  In addition to the notes above referred to, which did not represent the entire

payment to be made and secured by said stock as collateral, it was provided that said Pott and Austin were to give two other promissory notes of five thousand dollars each, to be indorsed and secured in such manner as might be approved by said Field.   It was further agreed that said Pott and Austin should have full and absolute power to sell and dispose of the said capital stock at any time.   All the notes, including the latter two, were given as provided for, and this suit is on one of the latter notes given by the defendant F. S. Pott and his wife, she having signed the same as the security provided for in the contract.   In negotiating for the sale of the real estate and insurance business and the capital stock, the value of the former was fixed at ten thousand dollars, and the cash payment which was made represented its purchase price; the value of the capital stock was fixed at fifty-five dollars per share, amounting to $35,750, represented by the various notes given, including the one in suit.

This action was commenced on the note in question some five years after the sale of the stock and delivery of the note.

The defense interposed was that there was no consideration for the note, it being averred that the capital stock for the purchase price of which the note was given had no value at that time.   In addition to this it was further averred that the sale and delivery of the note was occasioned through the fraudulent concealment and representations of Field as to the business and affairs of the corporation and of the value of its stock.   It is claimed that an additional defense was interposed, but that will be considered later.

Upon the issues specifically mentioned above the court found against the defendants, and the judgment was rendered for plaintiff for the principal and interest on said note.

A motion for a new trial having been denied, defendants appeal from that order alone.

While various specifications appear in the bill of exceptions relative to the insufficiency of the evidence to sustain the decision of the court, no discussion save as to one is made in the briefs.   This is addressed to the finding of the court that there was a sale of the stock by Field to Pott and Austin. As against this finding, it is contended on the part of the appellants that the evidence shows that the arrangement

between Field and Pott and Austin as to the shares of stock was not a sale, but simply an ingenious plan to raise money on the stock. There is no merit in this claim. By the terms of the contract it was a sale; the stock was transferred upon the books of the corporation to Pott and Austin; the contract provided for an option in Field to repurchase within two years from Pott and Austin such portions of the stock as might remain unsold; Pott and Austin paid an assessment on it long after it was transferred to them; they held it for several years after such transfer and ultimately disposed of it. The answer of the defendants treats the transaction as a sale and seeks to defeat the purchase of the note given by claiming that there was no consideration for it, and that the purchase was induced by fraudulent representations. The measures taken by Pott and Austin to ascertain the value of the shares of the capital stock pending negotiations for its purchase, and the testimony of witnesses on the trial, show it was a sale. All these matters support the finding of the court that it was a sale, and there is no pretense from the evidence that it was anything else. In fact, the only. basis which the counsel for appellants has for claiming that there was not a sale of the stock is that the agreement between Field and Pott and Austin recites that the latter "shall be the owners absolutely and completely of any and all dividends accruing to or payable upon said stock." It is claimed that this provision impliedly negatives ownership. We think, however, no such deduction follows. It is quite clear why this provision was inserted. The contract itself declared a sale to Pott and Austin of the stock, but provided that Field should hold it as collateral security for certain of the notes given for its purchase. In order, however, to clearly define what the rights of the purchasers should be while Field so held it, it was declared in the contract that Pott and Austin should have full and absolute power to sell and dispose of said stock while it was so held as security, and the provision quoted by appellant relative to dividends was for the purpose of giving them beyond any question the right to any dividends payable on said stock while it was so held. So that, from appellants' standpoint there is nothing to disturb the decision of the court that it was a sale, while, on the other hand, it is fully sustained by the facts which we have called attention to.

This disposes of the only point made as to the insufficiency of the evidence, and we now approach the next ground urged for a reversal—namely, that the court erred in its rulings relative to the admission of evidence. Appellant offered to show that Field, the vendor of the stock, agreed to give a written guaranty to Austin that he would never have to pay any part of the principal of the note given by him for the purchase price of said stock, and it is insisted that the court erred in refusing to admit such evidence. We do not see how this evidence was material. The note sued on here is a note given by F. S. Pott, with his wife as the security required under the contract with Field. There was no privity between Austin and Pott on this note. Austin could not be held upon it. The stock was delivered upon the execution of the notes called for in the contract, it became the property of the vendors, was used by them as their own and ultimately disposed of by them. The sale in that respect was fully executed. If any such arrangement was entered into by Field and Austin prior to the execution of the contract, it must be deemed to have been abandoned. It is no part of the written contract, and by the terms of that contract must the rights and obligations of the parties be determined. If this arrangement was entered into subsequent to the execution of the written contract, it could not affect that contract, because it would be a matter in which Austin and Field were alone concerned. Field had the right to release Austin from all obligation to him under the contract or upon the notes, and Pott could not complain that any of his rights were infringed on by reason of such release. Under the agreement Pott and Austin were to give Field their joint notes for $25,750 of the $45,750 to be paid for this capital stock and deliver to Field the stock as collateral security. In addition to this, and as part of the purchase price, they were to give two individual notes in five thousand dollars with other security approved by Field. In pursuance of this provision of the contract, Pott gave the note sued on with his wife as security. Austin could not be held on this note. He was not a party to it. If, as between Pott and Austin, the latter would be liable to Pott for his proportion of the amount paid on the note, any agreement between Field and Austin could not affect this liability. Independent, however, of these considerations, any agreement

made prior to the contract under which the sale was consummated, or any subsequent agreement, was inadmissible to change or vary the terms of the agreement as actually made and consummated.

It is further contended in this line that the court erred in rulings upon questions asked of the witnesses tending to show what the market value of the stock of the corporation was at the time of its purchase by Pott and Austin. Counsel refer to several rulings of the court in this respect, but when we examine the testimony of the witnesses during whose examination it is claimed these errors were committed, we find no ground for complaint. These inquiries were addressed to the actual value of the stock at the time of the sale, and there was no showing that the witnesses were qualified to speak on that subject, and as far as the inquiries were directed to the market value, it appears that the witnesses did testify upon the subject. Nor was any error committed on the question of a fictitious value of the stock. Counsel for appellant made inquiries of witnesses who were called by him to testify concerning the market value of the stock in question as to whether stock may not have a fictitious value in the market. Conceding that it may, we do not perceive that any error was committed in refusing to allow witnesses in the case at bar to testify on that subject. There was no evidence of any facts upon which it could be claimed that the stock in question had a fictitious value, and proof that such a condition might exist as to stocks generally could have no relevancy. The very witnesses of whom this inquiry was made testified that the stock in question at the date of the sale had no market value at all, so that whether in the market stocks might have a fictitious value or not was of no consequence.

The last and the principal point made on this appeal (the point strongly urged by counsel appearing in place of those who originally filed the opening and reply briefs on this appeal, and who made no particular insistence on it) is that the court failed to find upon a material issue in the case, to wit: whether dividends were paid upon the stock sufficient to discharge the interest on the note.

Counsel for appellants contend that this issue was before the court for determination, and counsel for respondent contends that it was not; that the court found on all material

issues raised by the answer which were only, whether at the time of the sale the stock purchased was of any value, and whether the sale was made through fraudulent representations of Field as to the value of said stock.

The contract which was entered into between Field and Pott and Austin at the time the note was given, and which is attached to the findings of the court as part thereof, contains the provisions that "The said Field hereby agrees and guarantees to said Austin and Pott that the yearly dividends upon said capital stock will be sufficient in amount to pay and discharge all interest due and payable upon all said notes in case of any deficiency, or in case of any contingency whatever whereby such dividends are not sufficient in amount to liquidate and pay all of said interest, then said Austin and Pott are to receive credit upon said notes for such deficiency, or at the option of said Field said deficiency may be paid in coin."

The answer of defendants contained, among other allegations, the following: "That in and by the terms of said agreement, and in order to continue and consummate his said fraud, the said Field did agree and guarantee to said parties that the interest upon the said notes about to be executed in accordance with said agreement would be kept fully paid by and out of the dividends declared and paid upon said stock." And another allegation set forth further on in the answer stated "that no dividends whatever had been declared or paid by said corporation, or by the officers thereof, upon said or any stock of said corporation since the first day of November, 1892, nor have there been any profits whatever earned or received by said corporation, nor any other resources from which said dividends could have been declared."

These are the two allegations upon which it is contended by appellant that the issue was raised upon which the court failed to find; that they constituted a special defense against the liability of the appellants for interest upon said notes. It is quite clear, however, when considered with relation to the main special defense interposed, and of which they formed part of the allegations—namely, fraudulent representations of the vendor Field as to the value of the property for the purchase price of which the notes were given—that these particular allegations were never intended to constitute the special defense which they are now urged to have presented.

These allegations are found in a long continuous recital of facts constituting a special defense of fraud upon which appellants relied to defeat the entire action. Notwithstanding that this is clearly apparent, counsel for appellants insist that they have now a right to treat these allegations as a special defense on the subject of interest, commingled with the special defense of fraud. The difficulty, however, with this claim of a right to segregate is that there is nothing to segregate. There has been no commingling of defenses. The allegations upon which appellants rely as constituting a special defense to the payment of interest are not commingled with the other special defenses of fraud, but they are apt, material, and proper allegations of facts supporting that claim alone, and were obviously not intended for any other purpose. Take the first allegation relative to the terms of the contract. It is distinctly made with reference to the defense of fraud. Up to this point in the answer the defendants were alleging fraudulent representations of Field leading up to the negotiations which eventuated in the making of the agreement, and in proceeding with their story in that respect alleged that, "in order to continue and consummate his said fraud," he made the agreement relative to the dividends. This was simply one of the particulars in which it was alleged the fraud consisted. It is not an allegation that by the contract the appellants were only under a contingent liability for interest, but it is one of the many fraudulent representations charged to have been made by Field of which appellants complained. As to the other allegation relied on, that "no dividends whatever had been declared or paid," etc., this is not used in the answer in connection with the allegation last referred to except as relating to the special defense of fraudulent representations and the worthlessness of said stock when purchased, and which worthlessness they allege continued up to the filing of the answer. This is apparent from many prior and subsequent allegations. No mention is made in this allegation of interest, nor is there anywhere in all the allegations of the answer the slightest hint that these allegations, or any other allegations, have reference to a special defense of non-liability for interest. It is to be observed, too, that in the first allegation quoted the full terms of the contract between Field and the appellants with reference to liability for interest are not stated. Nor, as

far as that liability is concerned, is it stated at all in the answer. The provision of the contract was that the dividends upon the capital stock would be sufficient in amount to pay and discharge all of the interest due and payable upon said notes, and in case of any deficiency, or in case of any contingency whatever whereby such dividends were not sufficient in amount to liquidate and pay all of said interest, the makers of the note were to receive credit upon the notes for such deficiency, or, at the option of Field, said deficiency might be paid in coin. It will be perceived that in the allegation first quoted, which refers to such provision, only the first portion of it is alleged; only that portion in which it is agreed that the interest would be kept fully paid up out of the dividends on the stock. As constituting one of the particular misrepresentations relied on in the special defense of fraud, this was all that was necessary to be pleaded of the contract. On the other hand, had this allegation been intended to serve in a dual capacity—as an allegation of fraud and also as an allegation presenting a special defense of non-liability for interest—it need hardly be suggested that to have alleged the other portion of the provision of the contract, as to the contingent liability of the makers, which was omitted, would have better indicated that non-liability as to interest was relied on. The fact that it was not alleged is some indication that the portion which was pleaded was only intended as a recital in aid of the special defense of fraud, and for no other purpose.

It was also alleged in the complaint that "no part of the principal or interest of said promissory note had ever been paid and the whole thereof, principal and interest, is now due, owing and unpaid." This allegation was admitted by the defendants by failure to deny it, but to defeat the entire action thereon the defendants set up want of consideration and fraud. If the defendants had, in addition to specially pleading these defenses, also specially pleaded non-liability for interest, the court might, while finding against them on the defense of want of consideration and of fraud, and that they were liable for the principal of the note, have yet found, if the evidence supported it, that under the terms of the contract they were not liable for interest. But in order to avail themselves of this latter defense it was their duty to plead it specially, and they did not do so. In fact, it is clear to our minds that the only

special defense urged by appellants in their answer, aside from the want of consideration for the notes, was that of fraud, and that the allegations quoted were pertinent to that defense, had particular and sole relation to it, and were intended to present it alone. This being true, we are aware of no rule of law which will permit us to wrest particular allegations from their plain position as part and portion of a continuous and apt recital of a special defense of fraud and treat them as allegations constituting another special defense which it is not pretended was separately and specially pleaded, and which it is obvious they were not designed to support.

We perceive no reason why the order denying the motion for a new trial should not stand, and it is therefore affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.